**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ZERO-MARCELL SINGLETON,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **CHANEL, INC.,** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Zero-Marcell Singleton (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Chanel, Inc. (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of 1990, as amended ("ADA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Pennsylvania Human Relations Act ("PHRA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Philadelphia, PA.
3. Upon information and belief, Defendant Chanel, Inc. is a luxury retailer with a location at 160 N Gulph Road, King of Prussia, PA 19406 and corporate headquarters located at 9 W

57th Street, #45, New York, NY 10019.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.
5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.
6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.
7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.
10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the ADA, the ADEA, Title VII, and the PHRA.

15. On or about June 8, 2025, Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging disability and age discrimination as well as retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2025-07122 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated August 12, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and more than one (1) year after filing her charge but within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

**MATERIAL FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. The following allegations regarding events occurring prior to August 12, 2024, are included as background evidence in support of Plaintiff's timely claims; not as independent bases for liability.

23. Plaintiff, born in 1973, is African American.

24. On or about November 1, 2020, Defendant hired Plaintiff in the position of Operations Manager.

25. Plaintiff was referred by several management-level employees at Defendant during the hiring process.

26. Plaintiff was well qualified for her position and performed well.

**PLAINTIFF BECAME DISABLED AND WAS PLACED ON A MEDICAL LEAVE OF ABSENCE**

27. In April 2021, Plaintiff contracted COVID-19 and was placed on a medical leave of absence as a result, during which Plaintiff suffered a stroke caused by COVID-19.

28. Plaintiff's COVID-19 diagnosis and/or subsequent stroke are considered to be disabilities under the ADA and/or PHRA.

29. The major life activities affected by COVID-19 and stroke include, but are not limited to, concentrating, performing manual tasks and brain function.

30. In or around August 2021, Dr. Amrita Kochhar, Primary Care Physician, cleared Plaintiff to return to work with the reasonable accommodations to work part-time in the amount of 25 hours per week, no heavy lifting and no standing for long periods of time.

**PLAINTIFF'S PRIOR COMPLAINTS AND CHARGE OF DISCRIMINATION**

31. However, Elizabeth DeLuca, Brand Manager, proceeded to pressure Plaintiff to return to her usual work hours of 50-60 hours per week and directed her to continue to work after she had worked her 25 hours.

32. DeLuca proceeded to harass Plaintiff by constantly emailing her regarding minor issues, not providing her with assistance and regularly held meetings when Plaintiff needed to leave to attend doctor's appointments.

33. Additionally, DeLuca continued to pressure Plaintiff to violate her medical restrictions as Dr. Kochhar gradually increased the amount that Plaintiff could work.

34. On September 20, 2022, Plaintiff filed a Charge of Discrimination with the EEOCalleging race and disability discrimination as well as retaliation against Defendant.

35. Plaintiff's Charge was assigned a Charge Number 530-2022-04030 and it was dual filed with the PHRC.

36. Following the filing of her Charge of Discrimination, Defendant's harassment of Plaintiff intensified as DeLuca continued to violate Plaintiff's medical restrictions and painted Plaintiff in a negative light to Defendant's leadership.

37. In or around July 2023, DeLuca was transferred to another location.

38. On July 21, 2023, the EEOC issued a Dismissal and Notice of Rights ("Right to Sue") regarding Plaintiff's EEOC Charge No. 530-2022-04030.

**DEFENDANT'S DISCRIMINATION AND RETALIATION CONTINUED UNDER NEW MANAGEMENT**

39. Plaintiff reported to Thomas Bosick, Interim-Boutique Manager, while Defendant found a permanent replacement.

40. In or around December 2023, Shonda Knox (30's) became the permanent Boutique Manager and Plaintiff's supervisor.

41. Shortly thereafter, Plaintiff noticed that Knox gave younger employees preferential treatment, as Knox provided younger Fashion Advisors with sales leads and did not properly apply disciplines as needed.

42. In addition, Knox micromanaged Plaintiff.

43. Knox and Nichole Alabi (30's), Senior Group Director of Fashion Retail Northeast, also spoke with Plaintiff regarding her previous difficulties with DeLuca and that Defendant had transferred DeLuca due to Plaintiff's complaints.

44. Upon information and belief, Knox and Alabi were aware of Plaintiff's prior complaints and the EEOC Charge she filed against Defendant.

**PLAINTIFF WAS SUBJECTED TO DISCRIMINATORY COMMENTS BASED ON HER AGE**

45. Knox also informed Plaintiff that Alabi had told her to "dress her age" and "dress young for clients" or words to that effect.

46. Plaintiff was uncomfortable by these comments as she believed that they were directed towards her age.

**PLAINTIFF COMPLAINED TO KNOX ABOUT HER MICROMANAGEMENT**

47. On April 11, 2024, Plaintiff complained to Knox via email about her micromanagement.

48. In response, Knox became defensive and told Plaintiff that she did not like her tone, or words to that effect.

49. Knox's conduct continued.

**ALABI UNFAIRLY CRITICIZED PLAINTIFF'S WORK PERFORMANCE**

50. On or about May 15, 2024, Alabi told Plaintiff during a walkthrough, "it was the worst Heart of House in the company", or words to that effect.

51. Upon information and belief, Alabi did not make similar comments to younger and/or non-disabled Operations Managers.

52. Plaintiff believed that Alabi's comment was meant to appear that she could not perform her job duties which was directed towards her age and/or disability.

**KNOX PLACED PLAINTIFF ON AN UNWARRANTED PERFORMANCE IMPROVEMENT PLAN ("PIP")**

53. On or about June 10, 2024, Knox placed Plaintiff on an unwarranted Performance Improvement Plan ("PIP") for 90 days.

54. Plaintiff believed that the placement on the PIP was in retaliation for her complaint of Knox's conduct and opposition to it.

**PLAINTIFF WAS PLACED ON FAMILY AND MEDICAL LEAVE ACT ("FMLA") LEAVE**

55. On or about June 24, 2024, Plaintiff was placed on a medical leave of absence in the form of FMLA leave until August 26, 2024, due to the discriminatory and retaliatory harassment.

56. Plaintiff returned to work on or about August 27, 2024.

**KNOX'S DISCRIMINATORY HARASSMENT CONTINUED UPON PLAINTIFF'S RETURN TO WORK**

57. Upon Plaintiff's return to work, Knox continued her discriminatory harassment of her.
58. Knox continued to micromanage Plaintiff, overly scrutinize her work and bring up false claims during their PIP meetings.
59. On October 11, 2024, Knox attempted to coerce Plaintiff to shorten her vacation, by stating "You're on a PIP" or words to that effect.
60. Plaintiff's vacation had been pre-approved months in advance.
61. Upon information and belief, Knox did not attempt to have younger and/or non-disabled employees shorten their pre-approved vacation if they were on a PIP.

**KNOX BLAMED PLAINTIFF FOR INCIDENTS IN WHICH SHE WAS NOT AT FAULT**

62. On or about November 2, 2024, Plaintiff met with Knox for her biweekly PIP meeting.
63. During the meeting, Knox brought up several incidents and blamed them on Plaintiff.
64. Plaintiff was not at fault for these incidents.
65. On or about November 4, 2024, Plaintiff emailed Knox an explanation as to how she was not at fault.

**PLAINTIFF COMPLAINED ABOUT THE DISCRIMINATION AND RETALIATION THAT SHE WAS SUBJECTED TO**

66. On or about November 14, 2024, Plaintiff met with Matthew Korn, Group Director, People & Organization – Fashion Retail Northeast, and complained about Knox and Alabi's discriminatory and retaliatory harassment.
67. Korn requested Plaintiff to send him an email detailing her complaints and that he would conduct an investigation into her claims.

68. On or about November 20, 2024, Plaintiff emailed Korn detailing the discrimination and retaliation she had been subjected to.

69. However, Korn did not properly address Plaintiff's complaint, and the discriminatory and/or retaliatory conduct continued.

**DEFENDANT TERMINATED PLAINTIFF**

70. On or about December 10, 2024, Alabi and Human Resources terminated Plaintiff for allegedly not successfully completing her PIP.

71. Plaintiff was 51 years old at the time of her termination.

72. The current leadership team is in their 30's and 40's.

73. Defendant replaced Plaintiff with Samantha Tobish (late 30's/early 40's).

**KORN DID NOT SUBSTANTIATE PLAINTIFF'S COMPLAINTS**

74. On or about December 20, 2024, Korn emailed Plaintiff a letter regarding his investigation.

75. The letter denied all of Plaintiff's complaints.

76. Upon information and belief, Korn did not conduct a proper investigation into Plaintiff's complaint.

77. Defendant discriminated against Plaintiff due to her age and disabilities and retaliated against her for requesting a reasonable accommodation, for reporting the aforementioned discrimination, and for filing a Charge of Discrimination with the EEOC in violation of the ADA, the ADEA, Title VII and the PHRA.

78. In addition, Defendant retaliated against Plaintiff for utilizing her rights under the FMLA in violation of the FMLA.

79. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

80. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

81. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

82. Plaintiff was qualified to perform the job.

83. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

84. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

85. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

86. Plaintiff's disabilities motivated Defendant's decision to take adverse actions against Plaintiff.

87. The purported reason for Defendant's decision is pretextual.

88. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

89. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

90. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

91. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

92. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

93. Plaintiff was qualified to perform the job.

94. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

95. Circumstances indicated that Plaintiff's disabilities were the reason for the adverse employment action.

96. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

97. Plaintiff's disabilities motivated Defendant's decision to terminate Plaintiff.

98. The purported reason for Defendant's decision is pretextual.

99. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

100. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – AGE DISCRIMINATION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

101. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

102. Plaintiff was born in 1973.

103. Plaintiff was qualified to perform the job.

104. Defendant terminated Plaintiff.

105. Circumstances exist which give rise to an inference of discrimination against Plaintiff based on age.

106. Defendant has no legitimate non-discriminatory reason for its actions.

107. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

108. Defendant's unlawful discrimination was willful or with reckless disregard to Plaintiff's federally protected rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IV – AGE DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

109. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

110. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her age.

111. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set

forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

112. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

113. Plaintiff engaged in activity protected by the ADA.

114. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

115. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

116. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VI – RETALIATION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

117. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

118. Plaintiff engaged in activity protected by the ADEA.

119. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

120. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

121. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VII – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

122. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

123. Plaintiff engaged in activity protected by Title VII.

124. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

125. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

126. Defendant's conduct/omission was willful or done with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VIII – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

127. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

128. Plaintiff engaged in activity protected by the PHRA.

129. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

130. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IX – RETALIATION**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

131. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

132. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

133. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for her own serious medical condition.

134. Plaintiff gave Defendant sufficient information to allow it to understand that she needed leave for FMLA-qualifying reasons.

135. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

136. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has retaliated against Plaintiff by terminating her employment.

137. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

138. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

139. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

140. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

141. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Zero-Marcell Singleton, requests that the Court grant her the following relief against Defendant:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

**JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 10, 2026

**By:** ***/s/David M. Koller***
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*